No. 24-2897



FILED

JAN 2 1 2025

U.S. Court of Appeals
Eighth Circuit

In the

# UNITED STATES COURT OF APPEALS

# FOR THE EIGHTH CIRCUIT

---

Bret Healy,

Plaintiff-Appellant,

vs.

Charlene Miller; Patrick T. Smith, Officially and Individually; First Judicial
Circuit, Brule County South Dakota,

Defendants-Appellees

---

Appeal from the United States District Court
For the District of South Dakota-Southern, No. 4:24-cv-04053-RAL
The Honorable Roberto A. Lange, Judge Presiding.

---

## BRIEF OF PLAINTIFF-APPELLANT
## BRET HEALY

RECEIVED

JAN 2 1 2025

U.S. COURT OF APPEALS
EIGHTH CIRCUIT

Bret J. Healy
*Pro Se*
P.O. Box 731
Chamberlain SD 57325
(605) 216-1825
Email: brethealy@gmail.com

# CORPORATE DISCLOSURE STATEMENT

Pursuant to F.R.A.P. 26.1 and Rule 26.1A of the Local Rules of the United States Court of Appeals for the Eighth Circuit, the Appellant discloses the following corporate interests:

1.     The parent companies of the corporation: Not Applicable. Appellant is an individual person.

2.     Subsidiaries not wholly owned by the corporation: Not Applicable. Appellant is individual person.

3.     Any publicly held company that owns ten percent (10%) or more of the corporation: Not Applicable. Appellant is an individual person.

i

# TABLE OF CONTENTS

**Page No.**

CORPORATE DISCLOSURE STATEMENT ………………………... i

TABLE OF CONTENTS …………………………………………. ii

TABLE OF AUTHORITIES ……………………………………. iv

ORAL ARGUMENT …………………………………………….. 1

JURISDICTIONAL STATEMENT ……………………………... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW …………... 2

STATEMENT OF THE CASE ………………………………….... 4

    A.    Course of Proceedings and Disposition in State Court ….. 4

    B.    Course of Proceedings and Disposition in South Dakota District Court ……………………………………………. 5

    C.    Statement of the Facts …………………………………… 6

SUMMARY OF ARGUMENT …………………………………… 11

STANDARD OF REVIEW ……………………………………….. 14

ARGUMENT ……………………………………………………… 15

    I.    THE *ROOKER-FELDMAN* DOCTRINE DOES NOT BAR THE DISTRICT COURT FROM EXERCISING JURISDICTION OVER BRET'S CLAIMS……………….. 15

        A.    Bret was Not a Party in the State Court Proceeding … 15

        B.    Bret Does Not Complain of Injuries Caused by the State Court……………………………………………. 18

        C.    Bret is not Inviting District Court Review and

Appellate Case: 24-2897    Page: 3    Date Filed: 01/21/2025 Entry ID: 5476655

Rejection of a State Court Order ........................ 20

D. The State Court Judgment Was Not Rendered Before
the District Court Proceedings Commenced ............. 26

II. JUDICIAL IMMUNITY DOES NOT SERVE AS A BAR
TO THE FEDERAL COURT EXERCISING
JURISDICTION OVER BRET'S CLAIMS .................... 27

A. The District Court Failed to Conduct a Fact-Intensive
Inquiry ...................................................... 27

B. Judge Smith Acted in the Clear Absence of
Jurisdiction ................................................. 28

C. Judicial Immunity is not a Bar to Prospective
Declaratory Relief ......................................... 30

III. ELEVENTH AMENDMENT IMMUNITY DOES NOT
SERVE AS A BAR TO THE FEDERAL COURT
EXERCISING JURISDICTION OVER BRET'S CLAIMS.... 26

IV. BRET STATES A CLAIM AGAINST BRULE COUNTY...... 34

V. THE ABSTENTION RULE ENUNCITIATED IN YOUNGER
V. HARRIS DOES NOT BAR THE DISTRICT COURT'S
EXERCISE OF JURISDICTION OVER BRET'S CLAIMS.... 36

CERTIFICATE OF COMPLIANCE ............................................. 39

CERTIFICATE OF SERVICE ..................................................... 40

Appellate Case: 24-2897    Page: 4    Date Filed: 01/21/2025 Entry ID: 5476655

*United States Supreme Court*

*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993)..................... 27

*Brandon v. Holt*, 469 U.S. 464 (1985) ………………………………….. 33

*Edelman v. Jordan*, 415 U.S. 651 (1974) …………………………………. 34

*Elrod v. Burns*, 427 U.S. 347 (1976) ……………………………………. 38

*Ex Parte Young*, 209 U.S. 123 (1908)………………………………………. 13-14,28, 31-32

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ……. 12, 15, 17

*Hafer v. Melo,* 502 U.S. 21 (1991). …………………………………….. 34

*Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890) ………. 31

*Johnson v. De Grandy*, 512 U.S. 997 (1994) …………………………….. 17

*Kentucky v. Graham*, 473 U.S. 159 (1985) …………………………….. 34

*Lance v. Dennis*, 546 U.S. 459 (2006) …………………………………. 17

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)………………………………………………………. 37

*Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) ……… 28

*New Orleans Public Service, Inc. v. New Orleans*, 491 U.S. 350 (1989)…… 12

*Spencer v. Kenma*, 523 U.S. 1 (1998)………………………………….. 32

*Spomer v. Littleton*, 414 U.S. 514 (1974) …………………………….. 36

iv

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ......................... 36

*Stump v. Sparkman*, 435 U.S. 349 (1978) ................................. 27

*Timbs v. Indiana*, 139 S. Ct. 682 (2019) .............................. 33

*United States v. Austin*, 509 U.S. 602 (1993) ......................... 33

*United States v. Bajakajian*, 524 U.S. 321 (1998) .................... 33

*Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247 (2011) ...... 14

*Verizon Md. v. PSC*, 535 U.S. 635 (2002) .............................. 32

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) ................. 35

*Younger v. Harris*, 401 U.S. 37 (1971) ............................... 36-39

### Eighth Circuit Court of Appeals

*Brown v. Griesenauer*, 970 F.2d 431 (8th Cir. 1992) ......................... 15

*Dornheim v. Sholes*, 430 F.3d 919 (8th Cir. 2005) ............................. 19

*Duty v. City of Springdale, Ark.*, 42 F.3d 460 (8th Cir. 1994). ................ 28

*Edlund v. Montgomery*, 355 F.Supp.2d 987 (8th Cir. 2005)................... 28

*Edwards v. City of Jonesboro*, 645 F.3d 1014 (8th Cir. 2011) ................. 15

*Entergy Ark., Inc. v. Nebraska*, 241 F.3d 979 (8th Cir. 2001) ................. 14-15

*Fochtman v, Hendren Plastics, Inc.*, 47 F.4th. 638 (8th Cir. 2022) ........... 12-13

*Hastings v. Wilson*, 516 F.3d 1055 (8th Cir. 2008) .............................. 14

*Healy v. Fox*, 46 F.4th (8th Cir. 2022) ........................................... 7,21

v

*Johnson v. City of Shorewood*, 360 F.3d 810 (8th Cir. 2004).................. 25

*Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753 (8th Cir. 2019)....... 27,30

*Simes v. Huckabee*, 354 F.3d 823 (8th Cir. 2004) ............................ 18-19

*Vann v. U.S. Dep't of Interior*, 701 F.3d 927 (D.C. Cir. 2012) ............... 14

*Minch Fam. LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960
    (8th Cir. 2010) ....................................................... 14

*Stebbins v. Harp & Assocs., LLC*, 586 F. App'x 682 (8th Cir. 2013) .......... 19

*Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012)........................... 28

### South Dakota District Court

*Healy v. Sup. Court of S.D.*, No. 4:23-CV-04118-RAL, 2023 U.S. Dist.
    LEXIS 224685, at *3 n.1 (D.S.D. Dec. 14, 2023) ..................... 24

*Novotny v. Tripp Cty.*, No. CIV 08-3020, 2010 U.S. Dist. LEXIS 122609
    (D.S.D. Nov. 18, 2010)................................................ 19

### Other Appellate Courts

*Azubuko v. Royal*, 443 F.3d 302 (3d Cir. 2006) ................................ 28

*Bolin v. Story*, 225 F.3d 1234 (11th Cir. 2000)................................. 28

*Drakeford v. Tuomey*, 792 F.3d 364 (4th Cir. 2015) ........................... 33

*In re Hazan*, 10 F.4th 1244 (11th Cir. 2021) .................................. 17

*Wright v. Riveland*, 219 F.3d 905 (9th Cir. 2000) ............................. 33

### Other District Courts

*Maskell v. Puryear,* No. 1:23-cv-1043, 2024 U.S. Dist. LEXIS 48503
    (W.D. Ark. Mar. 19, 2024) ......................................... 28

vi

*Miller v. Thurston*, 486 F. Supp. 3d 1256, 1265 (W.D. Ark. 2020) ........... 20

*Robinson v. Bridgeport Educ. Ass'n*, No. 8:16-CV-402, 2017 U.S. Dist. LEXIS 106831 (D. Neb. July 11, 2017). .................................. 19

*Rogers v. Gaston,* 2020 U.S. Dist. LEXIS 60965 (W.D. Mo. Apr. 7, 2020)... 30

*Tukes v. Domestic Abuse/Harassment Office*, No. 05-2184 (RHK/JSM), 2006 U.S. Dist. LEXIS 23103 (D. Minn. Apr. 25, 2006)................. 25

### *South Dakota State Court*

*Farmers Union Co-op. Brokerage v. Palisade Farmers Union*, 69 S.D. 126, 7 N.W.2d 293 (1942).......................................... 29

*Healy v. Barry Healy, Bryce Healy, Healy Ranch, Inc.*, 07CIV23-37 ........ 7

*Healy v. Healy Ranch, Inc.*, 07CIV23-27 ....................................... 7

*Bret James Healy v. Healy Ranch, Inc, Healy Ranch Partnership,*

*Healy v. Osborne*, 2019 S.D. 567, 934 N.W.2d 557 ............................. 1,7, 22,23

*Healy Ranch P'ship v. Mines*, 2022 S.D. 44, 978 N.W.2d 768.................. 21,22, 24

*Healy Ranch, Inc. v. Healy*, 2022 SD 43, 978 N.W.2d 786 ..................... 1, 21,22,24

*In re F. E. Schundler Feldspar Co.*, 70 S.D. 513, 19 N.W.2d 337 (1945) ... 28-29

*In the Matter of the Dissolution of Healy Ranch, Inc.*, Civ 23-58 ............ 4,8,9, 11,17,18, 29

### *Federal Rules of Appellate Procedure*

Fed. R. App. P. 4(a)(1)(a) ........................................................ 1

Appellate Case: 24-2897   Page: 8   Date Filed: 01/21/2025 Entry ID: 5476655

### Federal Law

28 U.S.C. §1291………………………………………………….. 1
28 U.S.C. §1331 ………………………………………………… 1
42 U.S.C. §1983 ………………………………………………… 1

### South Dakota Codified Law

SDCL 7-18-1 ……………………………………………………. 36
SDCL 15-6-11(b) ……………………………………………… 5,11
SDCL 15-6-58……………………………………………………. 26
SDCL 16-2-25 …………………………………………………… 36
SDCL § 47-1A-1402.3 …………………………………………. 8
SDCL 47-1A-1430(4) …………………………………………. 27,29
SDCL § 47-1A-1431.1……………………………………………. 16

### United States Constitution

U.S. Const. Amendment XI ……………………………………. 30,31

# ORAL ARGUMENT

Oral argument is not requested.

# JURISDICTIONAL STATEMENT

On March 18, 2024, Appellant Bret Healy ("Bret") filed a Complaint with the District Court for the State of South Dakota against Charlene Miller, Brule County Clerk of Court, Judge Patrick Smith, the First Judicial Circuit Court (the "State Defendants") and Brule County ("County Defendant") (collectively, the "Defendants") Dkt. 1. The pleading asserted deprivation of rights under 42 U.S.C. §1983 and requested declaratory and injunctive relief. *Id.* The District Court had jurisdiction over the claims pursuant to 28 U.S.C. §1331. *Id.* On March 25, 2024, the Defendants moved to dismiss the Complaint. Dkt. 8-9. The District Court granted Defendants' motion and dismissed the complaint in its entirety pursuant to Rule 12 of the Federal Rules of Civil Procedure on August 15, 2024. Dkt. 43-44.

On September 13, 2024, Bret filed a Motion for Reconsideration which was denied by the District Court on November 7, 2024. Dkt. 47, 58. On September 13, 2024, within the 30 days allowed by Fed. R. App. P. 4(a)(1)(a), Bret filed a timely notice of appeal. Dkt. 51. The Eighth Circuit Court of Appeals has jurisdiction herein pursuant to 28 U.S.C. §1291, which provides for jurisdiction in this Court over a final judgment from a district court.

Appellate Case: 24-2897   Page: 10   Date Filed: 01/21/2025 Entry ID: 5476655

For the convenience of the Court, Bret Healy is referred to as "Bret" or "Bret Healy". Healy Ranch, Inc. is referred to as "HRI" and Healy Ranch Partnership will be referred to as "HRP," or "the partnership." HRP's former attorney of record, Tucker Volesky, is referred to as "Volesky." The Circuit Court's Findings of Fact, Conclusions of Law, and Order filed on March 18, 2024, is referred to as the "Sanctions Order." *Healy v. Osborne*, 2019 S.D. 567, 934 N.W.2d 557, shall be referred to as "*Healy I*". *Healy Ranch, Inc. v. Healy*, 2022 SD 43, 978 N.W.2d 786, shall be referred to as *Healy II*. The real property of HRP as of the 1986 Partnership Agreement and for which a portion of the record title was purportedly transferred to HRI on March 12, 1995, and recorded on March 13, 1995, shall be referred to as "Healy Ranch".

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

### POINT I

1. Whether the District Court erroneously invoked the Rooker-Feldman Doctrine as grounds for dismissing Bret's Complaint?

**Apposite Cases**:

- *Simes v. Huckabee*, F.3d 823 (8th Cir. 2004).

- *Healy I.*

- *Healy II.*

- *New Orleans Public Service, Inc. v. New Orleans*, 491 U.S. 350 (1989).

2

- *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).

## **POINT II**

2. Whether the District Court erroneously held that judicial immunity serves as a bar to the federal court exercising jurisdiction over Bret's claims?

**Apposite Cases**:

- *Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753, 763–64 (8th Cir. 2019).

- *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994).

- *In re F. E. Schundler Feldspar Co.*, 70 S.D. 513, 513, 19 N.W.2d 337, 337 (1945).

- *Farmers Union Co-op. Brokerage v. Palisade Farmers Union*, 69 S.D. 126, 127, 7 N.W.2d 293, 293 (1942).

## **POINT III**

3. Whether the District Court erroneously held that Eleventh Amendment immunity bars the federal court from exercising jurisdiction over Bret's claims?

**Apposite Cases**:

- Ex Parte Young, 209 U.S. 123 (1908).

- *Spencer v. Kenma,* 523 U.S. 1, 17 (1998).

- *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

- *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991).

## **POINT IV**

3

4. Whether Bret stated a claim against Defendant Brule County?

**Apposite Cases**:

- *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

- *Spomer v. Littleton*, 414 U.S. 514, 521-23 (1974)

## POINT V

5. Does the abstention doctrine enumerated in *Younger v. Harris* bar the
   federal court from exercising jurisdiction over Bret's claims?

**Apposite Cases**:

- *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).

- *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423,
  435 (1982).

- *Younger v. Harris*, 401 U.S. 37 (1971).

- *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

### STATEMENT OF THE CASE

A.   <u>Course of Proceedings and Disposition in State Court</u>.

On November 17, 2023, attorney Lee Schoenbeck filed a Petition for Court
Supervised Dissolution of Healy Ranch, Inc. - purportedly on behalf of HRI - in
the First Judicial District. *See In the Matter of the Dissolution of Healy Ranch,
Inc.*, Civ 23-58. The individual HRI shareholders, including Bret, were explicitly
not named as parties. *Id.* On December 19, 2023, Attorney Volesky filed a Notice
of Limited Appearance on behalf of the Partnership to address the Court's

4

jurisdiction. Also on December 19, 2023, Volesky filed a Motion to Dismiss and Memorandum of Law in support thereof on behalf of the Partnership. On December 28, 2024, the Court *sua sponte* entered an Order to Show Cause requiring Bret and Volesky to establish they did not violate SDCL 15-6-11(b). Again on behalf of the Partnership, Volesky filed a Response to the Show Cause Order on January 16, 2024. A hearing was held on January 23, 2024, during which neither Schoenbeck nor Judge Smith refuted Bret's testimony. On or about March 15, 2024, Judge Smith sanctioned Bret in the amount of $240,000 plus attorneys' fees. ("Sanctions Order"). *Id.* Volesky was charged with sanctions in the amount of $10,000 and was reported to the South Dakota Bar Association for possible disciplinary action.[1] *Id.* For reasons unknown, Judge Smith provided a courtesy copy of his unfiled order to interested parties.

    B.    <u>Course of Proceedings and Disposition in South Dakota District Court.</u>

Approximately one hour before the State Court entered the Sanctions Order, Bret filed a Complaint with the District Court on March 18, 2024, requesting prospective declaratory relief voiding the Sanctions Order and permanent injunctive relief enjoining the enforcement of the Sanctions Order. On March 25, 2024, the

---

[1] HRP was now left with no legal representation in either state or federal court. Bret was unable to represent the partnership before the Court and was turned down by a number of attorneys who were leery of providing legal advice to HRP due to the Court's exorbitant amount of the sanctions imposed by Judge Smith.

5

State Defendants moved to dismiss the Complaint claiming the District Court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine, the case was barred by judicial immunity and Eleventh Amendment immunity, the complaint failed to state a claim against Brule County, and finally, under the Younger Abstention doctrine, dismissal was warranted. Dkt. 8-9. On April 4 and April 24, 2024, Bret requested a continuance of deadlines, including time to file a notice of appeal, thereby allowing him an opportunity to locate and retain legal counsel. Dkt. 12, 18. The District Court denied the request because the "reasons for the delay is within the control of the movant." Dkt. 46. On August 15, 2024, the District Court granted the Defendants' motion and dismissed the complaint in its entirety. Dkt. 43-44. On September 13, 2024, Bret filed a Motion for Reconsideration arguing the Court misapprehended the facts of the case in that Volesky represented HRP – not Bret. On that same day, Bret appealed the decision of the District Court. Dkt. 47 and 51.

    C.    <u>Statement of the Facts.</u>

Portions of the Healy Ranch have been owned and/or occupied by the Healy family since 1897. *Healy v. Osborne*, 2019 S.D. 56, ¶ 21, 934 N.W.2d 557, 560. When Bret's grandfather died, he left his 50% interest in HRP to his wife DeLonde. *Id.* Upon the untimely death of Bret's father in 1985, his mother, Mary Ann Osborne ("Osborne"), assumed control of Robert's 50% interest in HRP. *Id.* Accordingly, HRP was now owned by DeLonde and Osborne in equal shares – 50/50. Following

Appellate Case: 24-2897    Page: 15    Date Filed: 01/21/2025 Entry ID: 5476655

Robert's death, Bret, DeLonde, and Osborne executed a partnership agreement on January 25, 1986, wherein DeLonde's 50% ownership interest in HRP was transferred to Bret.[2] *Id.*

On or about January 1, 1992, an agreement was reached between Osborne and Bret, where Bret and his brothers (Barry and Bryce) would equally purchase Osborne's ownership interest in HRP for a deferred payment of $100,000.[3] This meant Bret would retain his 50% interest in HRP which was transferred to him by his grandmother, and he would purchase a third of his mother's 50% interest in HRP along with his two brothers. Ignoring the agreement, Osborne instead established a corporate entity named Healy Ranch, Inc. and claims to have transferred all stock and ownership interest in HRI to her three sons via a warranty deed[4] executed by

---

[2] In *Healy v. Fox*, 46 F.4th 738 (8th Cir. 2022), the Eighth Circuit stated, in dicta, that after January 25, 1986, Bret was a 50% partner in HRP, having acquired DeLonde's 50% interest. In *Healy I*, adverse parties had fraudulently claimed that Osborne held a 75% interest in HRP – an assertion ignored in later cases.

[3] Barry, Bryce and their attorney conceded in *Healy v. Healy Ranch, Inc.*, 07CIV23-27 and *Healy v. Barry Healy, Bryce Healy, Healy Ranch, Inc.*, 07CIV23-37, that the 1992 Agreement was for the sale of Osborne's interest in HRP. They had never conceded that point in prior litigation. These concessions were made in May through September, 2023 – prior to their attempt in the dissolution proceeding.

[4] The deed purported to move record title of a portion of HRP's real property (NOT all partnership property, which would have moved personal property). On its face, the deed stated that HRP was the owner of at least a majority of the capital stock of HRI.

Appellate Case: 24-2897     Page: 16     Date Filed: 01/21/2025 Entry ID: 5476655

Osborne and DeLonde (who at this time held no interest in HRP to transfer).[5] *Id.* Unbeknownst to Bret, his mother/partner purportedly transferred all the partnership property into a corporate entity she alone controlled and owned. Litigation ensued, but no Court has conclusively determined ownership of Healy Ranch or Healy Ranch, Inc.

On November 15, 2023, Barry and Bryce allegedly held a shareholder meeting and professed to have voted in favor of dissolving HRI. Barry and Bryce conduct HRI business under the mistaken assumption that the three shareholders – Bryce, Barry and Bret – own equal shares in the corporation. In the alternative, Bret contends that Barry and Bryce own at the most 1/6 of HRI's paid-up capital stock.[6]

On November 17, 2023, attorney Lee Schoenbeck filed a petition seeking a judicially supervised liquidation of HRI. On December 19, 2024, Volesky, on behalf of HRP, filed a Motion to Dismiss contending a majority of the shares in

---

[5] It has not been clarified by a Court or any party how an ex-partner can transfer all their partnership interest when they have none. Because of the 1992 Agreement, it is clear that neither DeLonde nor Osborne had any interest in either the real or personal property of HRP when they executed the 1995 warranty deed. This is contrary to the Uniform Partnership Act and to established precedent. See Betts v. Letcher, 1 S.D. 182 (SD 1890); Jade, Inc. v. Bendewald, 468 N.W.2d 138 (SD 1991). Simply put, even if Osborne were a partner in HRP after the 1992 Agreement, she could move only her partnership interest, not the real nor personal property of HRP.

[6] By purchasing 1/3 of Osborne's 50% interest in the 1992 Agreement, Barry and Bryce are at most each a 1/6 partner in HRP and the record in state court proceedings has credible evidence that HRP capitalized all of HRI.

Appellate Case: 24-2897     Page: 17     Date Filed: 01/21/2025 Entry ID: 5476655

HRI entitled to vote did not approve the proposal for voluntary dissolution as required by SDCL § 47-1A-1402.3. Volesky argued: (i) A partner cannot transfer partnership property but can only transfer their partnership interest; (ii) A partner in HRP transferred record title to HRP's real property to HRI, resulting in all the corporation's capital stock being issued to HRP; (iii) All capital allegedly possessed by HRI was contributed by the partnership; and (iv) The Petition fails to allege any facts that establish the appropriate percentage of ownership of the paid up capital stock in HRI actually voted for the dissolution. Attached to the Motion, Volesky submitted Exhibit 4 which Bret, as a partner in HRP, certified as a Substitute Motion which noted that the shareholder list provided by Bryce and Barry claimed that the contract for shares (deed) dated February 11, 2000, moved more than 74,000 shares each – or roughly 62,500 more shares than the contract clearly listed as what was sold.

Ignoring his duty to make an initial determination as to its authority to hear the case, Judge Smith failed to analyze whether the dissolution was approved in accordance with HRI's Bylaws which require fifty percent of the paid up capital stock to establish a quorum at a meeting of the shareholders. If Bret is correct in his calculation of ownership, the dissolution did not pass by the requisite paid up capital stock, and the State Court could not exercise jurisdiction over the dissolution. If Barry and Bryce are correct, the motion passed, and the Court could

9

order dissolution. In light of these differing opinions, Judge Smith conducted no jurisdictional analysis and blindly moved forward under the guise that HRI was owned equally by Barry, Bryce, and Bret. Further, Judge Smith acted in contravention of all established legal precedent, i.e., no court has determined ownership of HRI.

On December 28, 2023, Judge Smith issued an Order to Show Cause on his own initiative and directed Volesky, "as Bret's legal counsel, and Bret, purportedly as an effected HRI shareholder and acting on behalf of the partnership,"[7] to show cause as to why they have not violated SDCL 15-16-11(b) by filing a frivolous motion to dismiss based on "falsehoods, with no chance of a favorable ruling and no hope for a change of past decisions, and for the purpose of harassment and delay." Judge Smith described the specific conduct warranting sanctions as follows:

1. Judge Smith claims that Volesky knew his client and HRP collectively own no more than one-third interest in HRI and therefore 2/3 of the paid shares voted to authorize dissolution.[8]

2. Volesky filed a sworn "yet allegedly false" statement (the Certificate of Healy Ranch Partnership) while aware the statement is false.

---

[7] Judge Smith is incorrect. Volesky submitted a Notice of Appearance on behalf of Healy Ranch Partnership – not Bret. Bret was not a party to this action in his individual capacity at the time the Order to Show Cause was issued nor when Judge Smith issued the Sanctions Order.

[8] Relying on previous litigation between the parties, Judge Smith purports to determine ownership despite the fact that no Court has made such an analysis.

10

3.     Bret falsely swore in the Certificate and this known falsehood was filed by Volesky.

4.     In support of the alleged knowingly false claims, extensive, irrelevant and unnecessary filings were made in the form of exhibits put forth with the sole intent to relitigate past lawsuits and cause unnecessary delay or needless increase in the cost of litigation.

Judge Smith claims the alleged conduct violates SDCL 15-6-11(b)(1), (2), (3) and (4).[9]

On January 16, 2024, Volesky filed a Response to the Order to Show Cause on behalf of HRP arguing that no Court had yet determined the ownership of HRI, and based thereon, the Court would not be able to ascertain whether sufficient votes had been cast to approve the Petition for Court Supervised Dissolution. As such, his motion did not warrant the imposition of sanctions. On March 18, 2024, Judge Smith issued the Sanctions Order in which he misread prior court decisions to implicitly determine ownership of HRI[10] in contravention of all legal precedent and imposed sanctions upon Bret, a non-party in the litigation.

## SUMMARY OF ARGUMENT

---

[9] In the Order to Show Cause, Judge Smith ignored HRP's brief and Bret's testimony and simply accepted, without evidence, that there were 299,348 outstanding shares in HRI. This is contrary to Barry and Bryce's representations made in federal and state court (162,000 shares). In fact, it was not until November 17, 2023, Barry and Bryce asserted for the first time there were 299,348 outstanding shares in HRI.

[10] Per HRI's by-laws, the appropriate measure for determining ownership is paid-up capital stock. Barry, Bryce and HRI have never provided evidence of how they came into possession of more than 54,000 shares of stock.

11

The District Court contends that Bret's suit is barred by a hodgepodge of jurisdictional defects - the *Rooker-Feldman* doctrine, the Eleventh Amendment, judicial immunity, failure to state a claim, and the Younger Abstention doctrine. However, in *New Orleans Public Service, Inc. v. New Orleans*, the Supreme Court observed that "only exceptional circumstances justify a federal court's refusal to decide a case in deference to the states." 491 U.S. 350, 368 (1989). Courts have developed specific rules to address those situations where state court proceedings are implicated. Among them are the Younger abstention (addressing parallel litigation in state and federal court) and the *Rooker-Feldman* doctrine (precluding collateral federal attacks on state judgments). The salient common threads between these doctrines are that they seek only to avoid interference with ongoing state-court proceedings and improper second-guessing of state-court judgments. These doctrines do not serve as jurisdictional barriers in this case.

First, the District Court incorrectly dismissed Bret's complaint for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine encompasses four criteria that must be satisfied before the federal district court is deprived of subject-matter jurisdiction. The criteria contemplate cases that have been brought by "[1] state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the [federal] district court proceedings commenced and [4] inviting district court review and rejection

of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Fochtman v, Hendren Plastics, Inc.*, 47 F.4th. 638 (8th Cir. 2022). First, Bret was not a party to the state court proceedings, and as such, could not be a state court loser. As to the second factor, Bret is not complaining of injuries caused by a state court judgment. His claims centers on a state court judgment that is void ab initio due to the state court's lack of jurisdiction. Third, the state court judgment was entered approximately one hour after Bret filed his complaint in federal court. Finally, Bret is asking this Court to revisit the fraud that was imposed on the State Court (and this Court) by third parties and defendants.

Next, the District Court erred in concluding that the State Defendants possess absolute judicial immunity from this action. Judges are judicially immune only from actions seeking damages, not those seeking injunctive or declaratory relief against them in their official capacities, which is all Bret seeks here. To the extent the District Court was concerned that the relief Bret seeks would unduly intrude on state-court operations, such concerns should be addressed by tailoring the scope of any relief granted, not by dismissing the case at the outset on immunity grounds.

Defendants contended, and the District Court agreed, that Eleventh Amendment sovereign immunity bars Bret's suit on the grounds that requests for declaratory relief only do not fall within the ambit of Ex parte Young, which

establishes an exception to sovereign immunity. But the Court misunderstands that doctrine. "The Ex parte Young doctrine is based on a 'fiction' - namely, that 'when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.'" *Vann v. U.S. Dep't of Interior*, 701 F.3d 927, 929 (D.C. Cir. 2012) (*quoting Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)). "The Ex parte Young doctrine allows suits for declaratory and injunctive relief against government officials in their official capacities - notwithstanding the sovereign immunity possessed by the government itself." *Id.* Contrary to the District Court's arguments, Bret's complaint falls under the gambit of the Ex parte Young Doctrine. Further, Eleventh Amendment immunity does not bar Bret's claims for damages against Defendants in their individual capacities.

For these reasons and those stated below, this Court should overturn the District Court's decision.

## STANDARD OF REVIEW

The Court reviews the dismissal of a complaint for lack of subject matter jurisdiction under a de novo standard. *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008). This includes application of the *Rooker-Feldman* doctrine, judicial immunity and Eleventh Amendment immunity. *Minch Fam. LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 965 (8th Cir. 2010) (*Rooker-Feldman*),

14

*Entergy Ark., Inc. v. Nebraska,* 241 F.3d 979, 987 (8th Cir. 2001) (Eleventh

Amendment immunity), and *Brown v. Griesenauer*, 970 F.2d 431, 434 (8th Cir.

1992) (Judicial immunity).

## ARGUMENT

### I. THE *ROOKER-FELDMAN* DOCTRINE DOES NOT BAR THE DISTRICT COURT FROM EXERCISING JURISDICTION OVER BRET'S CLAIMS.

The District Court erroneously invoked the *Rooker-Feldman* doctrine as a

ground for divesting the federal court of jurisdiction. Dkt. 43 at p. 9. Under this

doctrine, litigants who lose in state court are precluded from obtaining federal

district court review of "injuries caused by state-court judgments." *Exxon Mobile*,

544 U.S. at 284. As both the Supreme Court and the Eighth Circuit have

emphasized, the *Rooker-Feldman* doctrine is exceedingly "narrow". It "is meant to

occupy 'narrow ground,'" and only bars federal review of state court judgments

"brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments.'" *Id.* at 280; *Edwards v. City

of Jonesboro*, 645 F.3d 1014, 1018 (8th Cir. 2011) ("The *Rooker-Feldman* doctrine

is narrow.")

A.   <u>Bret was Not a Party in the State Court Proceeding</u>.

The District Court erroneously held that Bret lost "when the First Judicial Circuit denied his motion to dismiss and ordered $240,000 in sanctions against him." Dkt. 43 at p. 7. And the Court never explained how Bret could lose when he wasn't even a named party to the action. The evidence unmistakably shows HRI expressly stated in its Complaint that he was not considered a party. SDCL § 47-1A-1431.1. ("It is not necessary to make shareholders parties to a proceeding to dissolve a corporation unless relief is sought against them individually.")

As further evidence that Bret was not a party to this action, Volesky filed a Notice of Appearance on behalf of the Partnership – not Bret. Volesky executed the Motion to Dismiss which served as grounds for the sanctions, filed, served, and advocated for the pleading on behalf of HRP. The only document executed by Bret was the Certificate he signed in his capacity as a partner of HRP thereby confirming that the document attached to the Motion to Dismiss as Exhibit 4 was a substitute motion that had been proposed and supported by a majority of the outstanding shares of HRI's common, paid-up capital stock. Bret in his individual capacity took no action until HRP's attorney withdrew – which did not occur until after the Court issued the Sanctions Order.[11]

---

[11]Due to the arbitrary and extreme Sanctions Order (in which Judge Smith takes specific notice of the lack of South Dakota authority for its imposition), Bret has been unable to locate an attorney willing to represent him. The combination of stripping Bret by purposefully conflicting Attorney Volesky and the doubling of

16

As Bret was not a party in the state court action, the first element of the *Rooker-Feldman* doctrine is not satisfied. *See Exxon Mobile*, at p. 287 (stating that the *Rooker-Feldman* doctrine "has no application to a federal suit brought by a non party to the state suit"); *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (holding that district court erred by using doctrine of privity to extend *Rooker-Feldman* to federal court litigant who was not a party to state court suit); *Johnson v. De Grandy*, 512 U.S. 997, 1005 (1994) (*Rooker-Feldman* does not bar claims by a nonparty to the earlier state court suit). In other words, the doctrine "does not apply when the parties to the federal case are not the same as the parties to the state case." *In re Hazan*, 10 F.4th 1244, 1250 (11th Cir. 2021). In *Hazan*, the Eleventh Circuit held that *Rooker-Feldman* did not apply because the parties in a state court foreclosure action and bankruptcy case were not the same, even though they were closely related - one party was a corporate entity owned by the husband of the other party. *Id.* This result was dictated by the Supreme Court's rejection in *Lance* of the argument that *Rooker-Feldman* should apply to parties in privity. 546 U.S. at 459. The Supreme Court held that those who are not in a position to appeal a state court judgment are not affected by *Rooker-Feldman*. *Id.* at 465.

---

fees (in *Healy I*) makes it a bad business decision for any attorney to risk representing Bret or HRP.

Appellate Case: 24-2897     Page: 26     Date Filed: 01/21/2025 Entry ID: 5476655

The state court's own actions belie any contention that Bret was a party to the dissolution proceeding. For example, the Petition for Voluntary Dissolution explicitly states that the shareholders were not named parties. The Order to Show Cause issued by Judge Smith was served on Tucker Volesky and Chris McClure – not Bret. Tucker and McClure represented Bret in other matters but not in the dissolution proceeding. Finally, the attorney who filed the Petition for Voluntary Dissolution served the Notice of Entry of Judge Smith's Order only on Volesky and McClure. Bret did not personally receive notice of, nor was he served with, the Order to Show Cause or the Sanctions Order.

Because Bret was not a party in the state court proceeding, federal court jurisdiction is not precluded by the *Rooker-Feldman* doctrine.

B. <u>Bret Does Not Complain of Injuries Caused by the State Court Judgment</u>.

As to the second factor, the District Court argues "the injuries alleged - the constitutional deprivations - arise from the actions the defendants took in issuing the state-court order." Order at p. 7. The District Court also took note that "Healy directly complains of injuries arising from the denied motion to dismiss and order for sanctions." *Id.*

The District Court's holding contravenes established Eighth Circuit precedent. In *Simes v. Huckabee*, 354 F.3d 823 (8th Cir. 2004), the state court found members of the judicial system (Quorum Court) in contempt of court. *Id.* at 825-

18

826. The members did not appeal to the Arkansas Supreme Court, but instead, filed a federal action alleging various federal statutory and constitutional violations. *Id.* at 826. Although the federal district court dismissed based on *Rooker-Feldman*, the Eighth Circuit reasoned that the federal claims had not been determined by the state court, the federal action was filed prior to the filing of the second contempt order, and the *Rooker-Feldman* doctrine did not apply. *Id.* at 827-829.[12] Here, the record clearly shows that Bret's constitutional claims were not determined by the state court; nor could they be since he was not a named party in the dissolution proceeding. And, like the situation in *Simes*, Bret's complaint with the District Court was filed before Judge Smith signed and filed the sanctions judgment.

Further, the state court action is still pending on appeal, and the Eighth Circuit has held that a state proceeding is not complete for *Rooker-Feldman* until the appellate process is complete. *See Dornheim v. Sholes*, 430 F.3d 919, 923-24 (8th Cir. 2005); *Stebbins v. Harp & Assocs., LLC*, 586 F. App'x 682 (8th Cir. 2013); *Robinson v. Bridgeport Educ. Ass'n*, No. 8:16-CV-402, 2017 U.S. Dist. LEXIS 106831, at *5 (D. Neb. July 11, 2017). In fact, "there is no judgment to

---

[12] *See also*, e.g., *Mullins v. Oregon*, 57 F.3d 789, 792 (9th Cir. 1995) (holding Rooker-Feldman inapplicable where a state court did not consider federal plaintiffs' constitutional claims); *Marks v. Stinson*, 19 F.3d 873, 885 n. 11 (3rd Cir. 1994) (stating that a federal court is not barred from hearing constitutional claims where they had not been determined by state court); *Robinson v. Ariyoshi*, 753 F.2d 1468 (9th Cir. 1985) (same).

Appellate Case: 24-2897    Page: 28    Date Filed: 01/21/2025 Entry ID: 5476655

review if suit is filed in federal district court prior to completion of the state-court action." *Novotny v. Tripp Cty.,* No. CIV 08-3020, 2010 U.S. Dist. LEXIS 122609, at *8 (D.S.D. Nov. 18, 2010). It is uncontroverted that the federal case was initiated before the state-court proceedings were complete, because the state-court appeal is *still* not complete. As such, the second prong of the *Rooker-Feldman* doctrine does not preclude the federal court from exercising jurisdiction over Bret's claims.

C.  Bret is not Inviting District Court Review and Rejection of a State Court Order.

The District Court found that "[g]ranting the requested relief would require this Court to determine whether the sanctions violate Healy's constitutional rights, which would necessitate review of the underlying motion to dismiss, its merits, and the appropriateness of the sanctions in light of that motion and Healy's prior litigation." Order at p. 7. On the contrary, finding a claim to be barred by *Rooker-Feldman* requires that it amount to a direct attack on the underlying state court decision. *Miller v. Thurston*, 486 F. Supp. 3d 1256, 1265 (W.D. Ark. 2020) (Even though Plaintiffs' claim "denies a legal conclusion" the state court reached in *Miller I*, it is sufficiently independent to permit this Court to exercise jurisdiction, especially given the Supreme Court's clear desire to limit the *Rooker-Feldman* doctrine so as not to encroach on the territory already governed by

20

principles of preclusion.") In other words, a challenge can be contextually similar to an issue adjudicated in state court without activating *Rooker-Feldman*.

Here, whether Bret's constitutional rights were violated was not the specific question addressed by the state court decision; rather, it is an independent claim. Furthermore, whether defendants, including Barry, Bryce, Osborne, Fox and their legal counsel have perpetrated fraud on the state court has never been addressed. In fact, Judge Smith simply accepts their version of events without any evidential support, and this complete lack of fact finding has occurred in more than the dissolution proceeding, including *Healy I*.[13] Following are examples of the fabrications that the state court has simply accepted as the truth:

- Barry and Bryce falsely stated that Bret was president of HRI for 17 years when in fact Bryce declared himself the president of HRI in 2010 through 2014 in public filings with the South Dakota Secretary of State and in HRI tax returns with the Internal Revenue Service.

- Barry Healy provided to Attorney Schoenbeck a chain of email communications between Bret and Barry dated June 28, 2016, which included a communication from Bret purportedly stating: "I owned 25% of place - mom insisted on 1/3 to everyone - so yes I did put all my chips back in for 8% …." On July 5, 2017, Attorney Schoenbeck offered into evidence an altered production of the communications. The offered evidence was an email production of five messages altered to fit onto one page and which excluded 16 email communications from the actual chain of emails that were exchanged. In other words, the

---

[13] Judge Smith was the Circuit Court Judge in *Healy II* and *Healy Ranch P'ship v. Mines*, 2022 S.D. 44, 978 N.W.2d 768.

Appellate Case: 24-2897     Page: 30     Date Filed: 01/21/2025 Entry ID: 5476655

email evidence, offered as genuine to the circuit court in *Healy I*, was an altered, truncated, and misleading document.[14]

- The South Dakota Supreme Court quoted the altered email as "telling" on the issue of whether Bret had notice of the 1995 warranty deed, and further stated that "Bret's e-mail to Barry in June 2016 demonstrates that he had actual knowledge that Healy Ranch, Inc. held title to Healy Ranch."

- In a brief filed by Osborne's counsel Jack Hieb and joined by HRI, Bryce and Barry Healy's counsel Lee Schoenbeck, referenced a two-page financial statement that Hieb filed with the court. The two-page financial statement was a confidential document that had been completed by Bret for a bank in 2001. Mr. Hieb claimed that the document was obtained by a subpoena in discovery but failed to identify the purported subpoena. In fact, Mr. Hieb did not obtain the confidential financial statement via subpoena despite representing to the circuit court in *Healy I* that he had.

- Bret's former partner, Osborne, knowingly made false representations regarding HRP's ownership structure. Further, Osborne admitted in *Healy I* that there was no written amendment, as required, to the 1986 Partnership Agreement, and she knew HRP was not a defunct entity despite representing that it was in *HRP v. Mines*.

So, what was the result of the foregoing fabrications and resulting acceptance by the state court – the Sanctions Order. How can Judge Smith determine Bret's claims are false and worthy of sanctions without determining which party is correct as to the ownership of HRI – and for that matter HRP? The simple answer is he cannot. In fact, the principal premise of Judge Smith's decision

---

[14] Judge Smith invented a new finding in regard to the forged email, i.e., Osborne gave differential amounts of her partnership interest to her three sons which had been contradicted by the admissions of Barry, Bryce and HRI and their legal counsel that Osborne's partnership interest was sold in 1992 in equal thirds.

22

to impose sanctions on Bret is his complete misunderstanding of legal precedent which had discussed - but not determined - the ownership of HRI. Judge Smith erroneously claims the history of litigation proves that Bret's continued claims of ownership are false. The truth is that ownership of Healy Ranch has never been substantively resolved. *See Healy II* (the notion "that *Healy v. Osborne* resolved the question of ownership would rewrite portions of our opinion").

In the first case, *Healy I*, Bret Healy brought tort and contract claims for money damages in connection with the transfer of record title to Healy Ranch. The South Dakota Supreme Court held Bret's claims were barred by the six-year statute of limitations. The decision in *Healy I* did not determine ownership of anything. Indeed, the Court explicitly stated:

> We decline to address Bret's claim of ownership because the threshold issue in this case centers on the timeliness of Bret's claims for conversion, breach of contract, fraud, conspiracy to commit fraud, unjust enrichment, breach of fiduciary duties, and negligence. Each of these causes of action are subject to the six-year statute of limitations under SDCL 15-2-13. Therefore, even if Bret retained an ownership interest in Healy Ranch through the 1986 partnership, he must nonetheless timely commence suit within the applicable statute of limitations.

In *Healy II*, the South Dakota Supreme Court also held it did not decide ownership:

> Here, we agree with Bret's assertion that our decision in *Healy Osborne* cannot be used to invoke issue preclusion in this case. The question decided in *Healy v. Osborne* was whether Bret's claims against his family and former attorney were time-barred. As indicated above, we did not determine the question at issue in this quiet title action, which relates

23

to ownership of the Ranch. *See Healy*, 2019 S.D. 56, ¶ 21, 934 N.W.2d at 563 ("We decline to address Bret's claim of ownership[.]").

*** 

Nor did we effectively decide the ownership question in our analysis of the attorney fees issue when we stated that "Bret filed the lawsuit for the purpose of preventing the sale of the property, not because he believed his partnership interest remained enforceable." *Id.* ¶ 37, 934 N.W.2d at 567. This passage was simply, as it states, a comment on the unlikely nature of Bret's untimely effort to assert his *partnership interest* which, in any event, implicated personal property rights-not real property rights. (Emphasis added)

*Id.* at pp. 46-47.

In *HRP v. Mines*, the South Dakota Supreme Court held that the Circuit Court (which happened to be Judge Smith) incorrectly read *Healy I* by utilizing certain factual findings regarding ownership of the Ranch:

> The circuit court's decision to dismiss HRP's complaint was erroneous in several respects. First, relying upon the doctrine of res judicata, the court exceeded the scope of the pleadings and, perhaps more critically, incorrectly read *Healy v. Osborne* to affirm certain factual findings regarding ownership of the Ranch, stating: [The *Healy v. Osborne* circuit court] made a specific finding that the 1986 Healy Ranch Partnership never had any title to any land of the Healy Ranch, only the 1972 Partnership did. That ownership interest was transferred to Healy Ranch, Inc. in 1995. It is undisputed that the South Dakota Supreme Court affirmed the [circuit court's] findings, which found that the 1986 Partnership never had any land interest in Healy Ranch and Bret Healy only had an interest in the 1986 Partnership, not the 1972 Partnership.

*Id.*

In *Healy v. Supreme Court of S.D.*, No. 4:23-CV-04118-RAL, 2023 U.S. Dist. LEXIS 224685, at *3 n.1 (D.S.D. Dec. 14, 2023), Judge Lange noted:

24

> The court in *Healy I* specifically "decline[d] to address Bret's claim of ownership" and instead "center[ed] on the timeliness of Bret's claims." *Healy I*, 934 N.W.2d at 563. The court found Bret's contract and torts claims untimely and barred by the statutes of limitations; in so deciding, the *Healy I* court effectively prevented Bret Healy from challenging that each of Bret, Barry, and Bryce owned one-third of HRI, indirectly confirming the ownership status quo.

Judge Lange does not cite any paragraph of any prior decision, or any parts of the record from previous cases to support his declaration. Judge Lange also points to no authority that a Court can indirectly determine ownership as "status quo" without any evidence. [15] In fact, the South Dakota Supreme Court has never claimed it had determined ownership of HRI, including in its own briefing before the District and Appellate levels in *Healy v. Supreme Court of S.D.*

In summation, the District Court's argument that the federal court should dismiss Bret's claims for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine is wrong. As legal precedent has recognized, *Rooker-Feldman* does not apply where, as in this case, Bret challenges his brothers' (and other third party) actions in corrupting the state court proceedings in which the Sanctions Order was obtained. The Eighth Circuit has held that alleged "misrepresentations perpetrated in the state court proceedings" by third parties do not bar application of the *Rooker Feldman* doctrine. *Johnson v. City of Shorewood*, 360 F.3d 810, 819

---

[15] Further, in 4:23-cv-04118, Judge Lange provides no authority for the proposition that ownership of capital stock can be determined indirectly.

(8th Cir. 2004); *Tukes v. Domestic Abuse/Harassment Office*, No. 05-2184 (RHK/JSM), 2006 U.S. Dist. LEXIS 23103, at *12 (D. Minn. Apr. 25, 2006). Where a plaintiff alleges wrongful acts by the adverse party (vs. legal error by the state court), that plaintiff has alleged extrinsic fraud, removing the claim from the rubric of the *Rooker-Feldman doctrine*. Bret alleges such wrongful acts by Barry, Bryce, HRI, Osborne and their legal counsel. Accordingly, the District Court committed clear and manifest error in its analysis under prong three of the *Rooker-Feldman* doctrine.

> D.    The State Court Judgment was not Rendered Before the District Court Proceedings Commenced.

The fourth and final requirement for the *Rooker-Feldman* doctrine to apply is that the state court order was rendered before Bret initiated the present action. Contrary to the District Court's rationale, a Court order is not final until it has been signed and entered by the Clerk of Court. Judge Lange put forth much effort to establish that an unsigned courtesy copy of the state court order was sufficient to satisfy the fourth prong of the *Rooker-Feldman* doctrine. However, the record unmistakably shows that the state court ***entered*** its judgment on March 18, 2024, approximately one hour after Bret filed his Complaint with the District Court. "…A judgment or an order becomes complete and effective when reduced to writing, signed by the court or judge, attested by the clerk and filed in the clerk's office. …" SDCL 15-6-58.

26

Even if this Court finds Judge Lange was correct in his holding that the state court order was rendered prior to the filing of Bret's federal complaint, *Rooker-Feldman* nonetheless does not bar the Court's jurisdiction, because Judge Lange is unable to successfully argue fulfillment of the other three prongs of the *Rooker-Feldman* doctrine.

## II. JUDICIAL IMMUNITY DOES NOT SERVE AS A BAR TO THE FEDERAL COURT EXERCISING JURISDICTION OVER BRET'S CLAIMS.

The District Court held that the State Court did not act "in the complete absence of all jurisdiction" because SDCL § 47-1A-1430(4)[16] authorizes the dissolution proceeding and SDCL § 15-6-ll(c)(l)(B) authorizes a judge to issue sanctions. Order p. 9-10. Judges are accorded immunity from liability for monetary damages and injunctive relief when engaged in "judicial acts." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978); *Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753, 763–64 (8th Cir. 2019). The party claiming immunity "bears the burden of establishing the justification for such immunity." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993).

A. The District Court Failed to Conduct a Fact-Intensive Inquiry.

---

[16] SDCL 47-1A-1430(4) Grounds for judicial dissolution. The circuit court may dissolve a corporation: (4) In a proceeding by the corporation to have its voluntary dissolution continued under court supervision.

The "touchstone" for justifying judicial immunity is whether a claim challenges a judge's "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Id.* at 435-36. Judicial immunity, however, does not extend to the administrative or executive functions that judges "may on occasion be assigned by law to perform," even if such acts are essential to the very functioning of the courts or to requests for prospective declaratory relief. *Edlund v. Montgomery*, 355 F.Supp.2d 987 (8th Cir. 2005). Immunity from suit is "a fact-intensive inquiry that will turn on the record as it develops at least through discovery." Based upon the non-existent record in this case on the application of judicial immunity, the District Court clearly erred in drawing unsupported conclusions as to this issue.

B. <u>Judge Smith Acted in the Clear Absence of Jurisdiction.</u>

Judicial immunity from § 1983 actions bar a plaintiff's recovery in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, a judge does not have immunity for non-judicial actions. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). Second, a judge does not have immunity from lawsuits based on actions taken in the complete absence of jurisdiction.[17] *Id.*

---

[17] *See also Maskell v. Puryear,* No. 1:23-cv-1043, 2024 U.S. Dist. LEXIS 48503, at *2 (W.D. Ark. Mar. 19, 2024); *Mireles v. Waco*, 502 U.S. 9, 12, 112 S. Ct. 286,

Appellate Case: 24-2897    Page: 37    Date Filed: 01/21/2025 Entry ID: 5476655

South Dakota legal precedent establishes that "[t]he procedure for voluntary dissolution of a corporation is purely statutory, and requirements of statute ***must*** be complied with to give court jurisdiction." *In re F. E. Schundler Feldspar Co.*, 70 S.D. 513, 513, 19 N.W.2d 337, 337 (1945) (Emphasis added). SDCL 47-1A-1430(4) declares that the "circuit court may dissolve a corporation … [i]n a proceeding by the corporation to have its voluntary dissolution continued under court supervision." In proceeding for voluntary dissolution of a corporation, the corporation has the burden to establish that the resolution for dissolution was adopted in the manner prescribed by law. *Farmers Union Co-op. Brokerage v. Palisade Farmers Union*, 69 S.D. 126, 127, 7 N.W.2d 293, 293 (1942). Here, the Petition for Court Supervised Dissolution claims a majority of the shares of common stock voted in favor of dissolution and lists the shareholders as each owning 1/3 of the shares. The supporting resolution was executed by only two of the shareholders with no indication that Bret was present at the meeting. In fact, Judge Smith was not provided with any evidence that conclusively demonstrated HRI was owned in this fashion, and he was acutely aware that no court has made such a determination.[18] *Id.* at 127 ("Generally, trial court must consider the

_____

116 L. Ed. 2d 9 (1991); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006); *Bolin v. Story*, 225 F.3d 1234, 1239-40 (11th Cir. 2000).

[18] The assertion regarding the number of outstanding shares issued in the Petition filed by Attorney Schoenbeck on November 17, 2023, i.e., 299,348 shares, is

Appellate Case: 24-2897     Page: 38     Date Filed: 01/21/2025 Entry ID: 5476655

outstanding stock as shown by the stock book of a corporation, in determining the amount of outstanding stock to determine whether a resolution for voluntary dissolution has been adopted by the statutory vote.") South Dakota's statutory scheme for dissolving a corporation was not followed, and as such, Judge Smith acted in clear absence of jurisdiction – not in excess of jurisdiction. Therefore, judicial immunity does not bar this Court from exercising jurisdiction over Bret's claims.

C.   Judicial Immunity is not a Bar to Prospective Declaratory Relief.

Bret asks the federal court for prospective declaratory relief voiding Judge Smith's orders. Many courts, including this Court, have held that judicial immunity is not a bar to prospective declaratory relief. *See, e.g., Justice Network Inc. v. Craighead Cty.,* 931 F.3d 753, 764 (8th Cir. 2019); *Rogers v. Gaston,* 2020 U.S. Dist. LEXIS 60965, at *15 (W.D. Mo. Apr. 7, 2020).

## III.   ELEVENTH AMENDMENT IMMUNITY DOES NOT SERVE AS A BAR TO THE FEDERAL COURT EXERCISING JURISDICTION OVER BRET'S CLAIMS.

The District Court held that Bret's § 1983 claims against the First Judicial Circuit Court were barred by the Eleventh Amendment, because the claims against

_____

contrary to the assertion made by Schoenbeck on November 15, 2023, in Case No. 4:23-cv-04118 which noted the contract dated February 11, 2000, which involved only 162,000 shares. The Shareholder List (noted in the Substitute Motion) produced by Bryce/Barry in 2023 fraudulently asserts that approximately 225,000 shares were sold via contract on February 11, 2000.

Judge Smith and Clerk Miller are actions against the state. Order at p. 11. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. "The Amendment provides states with immunity from suit. . . in federal court not only from suits brought by citizens of other states, but also from suits brought by their own citizens." *Hans v. Louisiana*, 134 U.S. 1, 13-14, 10 S. Ct. 504, 33 L. Ed. 842 (1890)).

The District Court found that "[r]etrospective relief denominated as 'prospective' does not overcome Eleventh Amendment immunity, and Healy's claims are barred." Order at p 12. Contrary to the District Court's argument, in Ex Parte Young, the U.S. Supreme Court enunciated an exception to Eleventh Amendment immunity that permits a plaintiff to sue an individual in his official capacity in actions seeking prospective declaratory and/or injunctive relief. 209 U.S. 123 (1908). Conducting an extensive analysis of the U.S. Constitution and applicable federal law, the Supreme Court found that the federal courts have power to "restrain a state officer from executing an unconstitutional statute of the State, when to execute it would violate rights and privileges of the complainant which had been guaranteed by the Constitution and would work irreparable damage and

31

injury to him. *Id.* at 152. The Supreme Court further reasoned that "a suit against individuals for the purpose of preventing them as officers of a State from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the State within the meaning of the [Eleventh] Amendment." *Id.* at 154. The reasoning behind the Ex Parte Young exception is that a state could not instruct its officer to act in an illegal way. *Id.* at 159-60.

In his verified complaint, Bret asks for declaratory and injunctive relief, both of which are prospective forms of relief. To refute Bret's argument that the Ex Parte Young exception applies to his claims, the District Court contends that "Healy is asking this Court to void an issued state-court order that allegedly violates the Constitution. Retrospective relief denominated as "prospective" does not overcome Eleventh Amendment immunity, and Healy's claims are barred." Order at p. 12. However, this misunderstands Ex Parte Young, which turns on the nature of the relief, not the scope of the relief. *See Verizon Md. v. PSC*, 535 U.S. 635, 645(2002) (courts need only conduct a "straightforward inquiry" into whether relief is "properly categorized as prospective.") Taken together, Bret properly alleges a systemic, ongoing violation of federal constitutional and civil rights law, which is all he is required to do at this stage.

Further, because there is a reasonable expectation the State Defendants will attempt to enforce the Sanctions Order, Bret's claims are "capable of repetition, yet

32

evading review." *Spencer v. Kenma,* 523 U.S. 1, 17 (1998). Because he seeks prospective relief from Judge Smith and Charlene Miller in their official capacities, Bret's claims comfortably fit within the Ex Parte Young exception to Eleventh Amendment immunity.

The Eleventh Amendment likewise does not bar Bret's claims for damages against Defendants in their individual capacities. Bret has sued various officials in their individual capacities for violating the Fourth, Fifth, Eighth,[19] and Fourteenth Amendments.[20] The State Defendants seek to cloak themselves as individuals

---

[19] The Eighth Amendment prohibits excessive fines, U.S. Const. amend. VIII, § 1, which applies to the states under the Fourteenth Amendment. *Timbs v. Indiana*, 139 S. Ct. 682, 686-87 (2019) ("The Excessive Fines Clause is therefore incorporated by the Due Process Clause of the Fourteenth Amendment"). In *United States v. Austin*, the Supreme Court stated that the "Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as punishment" including for retributive or deterrent purposes. 509 U.S. 602, 609-610 (1993)." "Courts typically consider there to be two elements to an Eighth Amendment Excessive Fines Claim: (1) did the government extract payment for the purpose of punishment, even in part, and (2) was the extraction excessive?" *Id.* 664 F.Supp. 3d at 957 (*citing Wright v. Riveland*, 219 F.3d 905, 915 (9th Cir. 2000)). "The Supreme Court has adopted a 'gross disproportionality' test to determine whether a fine is excessive for purposes of the Excessive Fines Clause." *Id. (citing United States v. Bajakajian*, 524 U.S. 321, 323 (1998); *Drakeford v. Tuomey*, 792 F.3d 364, 387 (4th Cir. 2015) (explaining that a civil fine will be found "constitutionally excessive only if it is grossly disproportional to the gravity of the offense." (cleaned up and citation omitted).

[20] The alleged offense justifying the sanctions was the mere filing by Volesky on behalf of HRP a simple Motion to Dismiss. It appears that the imposition of excessive sanctions on Bret is a clear act of retribution by Judge Smith, because Bret had the audacity to file claims against South Dakota Supreme Court Justices and serve those Justices at their residences via the respective Sheriffs' Offices in

33

under the protection of the Eleventh Amendment. This is an inaccurate reading of the law. The Eleventh Amendment immunizes states from suits for money damages, including damages claims against officials in their official capacities. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). As the Supreme Court has consistently emphasized, the Eleventh Amendment does not bar "an award of damages against an official in his personal capacity [that] can be executed only against that official's personal assets." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In *Hafer v. Melo*, the Court relied on *Graham*, noting that the Eleventh Amendment does not bar suits to impose "individual and personal liability" on state officials for unconstitutional conduct. 502 U.S. 21, 30–31 (1991). The Court reaffirmed that damages awards "against individual defendants in federal courts are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." *Id.* at 30 (internal quotation marks and citation omitted). Here, Bret brought his constitutional claims against the Defendants in their individual capacities. Dkt. 1. Damages awards against state officials sued in their individual capacities are only barred by the Eleventh Amendment where the relief sought "necessarily requires payment of state funds." *Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (internal quotation marks omitted). Here, because Bret only seeks to

---

their counties of residence in 4:23-cv-04118 starting one week prior to Judge Smith's email with the courtesy copy on March 15, 2024.

recover damages for his constitutional claims from the individuals and not from the State, the Eleventh Amendment does not bar his claims. Accordingly, the District Court's ruling should be overturned.

## IV. BRET STATES A CLAIM AGAINST BRULE COUNTY.

Brule County argues that "Healy's complaint fails to allege any conduct by Brule County or a Brule County official that would violate the Constitution, and no facts that the general violations alleged in the complaint arose from an official policy or custom of Brule County." Dkt. 34 at p. 4. The District Court agreed and erroneously held that Brule County is entitled to dismissal under both arguments. Order at p. 12. Bret's action is based on the preclusive, chilling effect of the Sanctions Order on his ability to protect his Constitutional rights, to defend against the dissolution proceeding, and to locate an attorney willing to face the State Defendants' contempt. Further, Bret is seeking protection from what will be the Court's continuing enforcement of the Sanctions Order through the judicial system if he refuses to pay, consequences of which can be rather severe.

Bret's claims fall under § 1983 which prohibits lawsuits for legal damages against states, their agencies, and state officials in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office [and a]s such, it is no different from a suit against

35

the state itself"). However, § 1983 claims for declaratory or injunctive relief against individual defendants in their official capacity are not prohibited and do not require "personal involvement." Requiring a showing of the "personal involvement" in § 1983 actions for prospective relief would run afoul of Rule 25(d)(1) of the Federal Procedure, providing for automatic substitution of a public officer who is a party to an action in his official capacity and who ceases to hold office while the lawsuit is pending. *See* Fed. R. Civ. P. 25(d)(1); *Spomer v. Littleton*, 414 U.S. 514, 521-23 (1974) (discussing automatic substitution in the context of § 1983 action for injunctive relief).

As noted, Brule County, South Dakota is providing resources and support for the challenged actions, including the facilities for Clerk Miller to execute Judge Smith's orders, causing constitutional injury. *See* SDCL 16-2-25; *See also* SDCL 7-18-1 (explicitly allowing counties to "sue and be sued, plead and be impleaded, in any court in this state."). Thus, claims may be brought against Brule County, which is subject to suit for the deprivation of rights.

## V.    THE ABSTENTION RULE ENUNCIATED IN YOUNGER V. HARRIS DOES NOT BAR THE DISTRICT COURT'S EXERCISE OF JURISIDICTION OVER BRET'S CLAIMS.

The District Court held that "[e]ven if this Court had jurisdiction, it would decline to exercise it under the abstention rule set forth in *Younger v. Harris*, 401 U.S. 37 (1971)." Order at p.14. Contrary thereto, federal courts have a "virtually

Appellate Case: 24-2897     Page: 45     Date Filed: 01/21/2025 Entry ID: 5476655

unflagging" "obligation" to adjudicate cases within their jurisdiction. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (citation omitted). Although Younger abstention is an exception to this rule, the Supreme Court has emphasized that it is a narrow one. To ensure the doctrine is not extended beyond its purpose, the Supreme Court clarified that courts may abstain in only three discrete circumstances: when a federal court order would interfere with (1) criminal prosecutions, (2) civil enforcement proceedings, or (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 78 (citation omitted). Even then, three "additional factors" must exist for abstention to be appropriate. *Id.* at 81. There must be "(1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges." *Id.* (citation and alterations omitted). Application of these principles demonstrates that the District Court's arguments for abstention lack merit. And, even if Younger abstention is applicable, it should not be invoked by federal courts where the constitutional claims cannot be determined in the state proceedings or where there is "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982).

Appellate Case: 24-2897    Page: 46    Date Filed: 01/21/2025 Entry ID: 5476655

Younger abstention is not applicable here because the constitutional issues in this case are distinct from the supervised dissolution pending in state court and would not interfere with it. In *Younger*, the Supreme Court held that a district court erred in enjoining a state criminal prosecution when plaintiff's federal claim could also have been raised as a defense in the state prosecution. 401 U.S. at 53-54. Here, Bret's federal claims, and the requested relief, are not directed at the dissolution proceedings, but the constitutionality of the order for sanctions and how the Court intends to enforce it, issues that cannot be raised as a defense in the court supervised dissolution proceedings. A determination by this Court that the sanctions order violates the Eighth Amendment, for instance, would not prejudice the conduct of the trial on the merits in the dissolution proceedings. Regardless of how the constitutional issues are resolved in this matter, the dissolution proceedings will continue to move forward unimpeded. The District Court's order claims, however, that "the state has an interest in regulating ***parties*** and proceedings before it." Order at p.12 (Emphasis added). At face value, that is a valid argument. However, one key point has been overlooked - Bret was not a party before the Court.

Because the constitutional claims in this case are separate and distinct from the corporate dissolution proceedings in state court, and would not interfere with those proceedings, the Younger abstention doctrine does not apply. Further, it is

38

well established that the deprivation of constitutional rights "unquestionably constitute irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Younger*, 401 U.S. at 53 (suggesting abstention is not appropriate where the state law is "flagrantly and patently violative of express constitutional prohibitions"). Here, the Verified Complaint alleges claims under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, based on a proceeding to show cause and order sanctioning Bret $240,000 for Volesky asserting a jurisdictional defense in the dissolution proceedings through a motion to dismiss filed not by Bret but by Healy Ranch Partnership. The circumstances shown by the record are extraordinary, evidencing a need for immediate federal equitable relief. Even if Younger were applicable, abstention would not be appropriate.

## CONCLUSION

For the foregoing reasons, Bret respectfully asks that this Court to reverse the District Court's order dismissing Bret's complaint and remand this case for further proceedings.

Dated this 17th day of January, 2025.

Bret Healy

Bret Healy

## CERTIFICATE OF COMPLIANCE

Undersigned hereby certifies as follows:

39

1. **Volume Limitation.** This brief complies with F.R.A.P. 32(a)(7)(B)(i) because the number of words in the brief, excluding the Cover Page, Summary of Case and Request for Oral Argument, Table of Contents, Table of Authorities, and Certificates is less than 13,000 words, that it is, the brief's word count, after proper exclusions is 9,769.

2. **Typeface Requirements and Typestyle Requirements.** This brief complies with F.R.A.P. 32(a)(5) and 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365, and the typestyle is 14 point, Times New Roman.

3. **Emails.** The emails for this brief (a) to the Court, and (b) to opposing counsel, comply with 8th Cir. R. 28A(h) because they have been scanned for viruses and are virus free. Further, the emails comply with 8th Cir. R. 28A(h)(3) because they were created by printing to PDF from the original word processing file.

Dated this 17th day of January, 2025.

Bret Healy

Bret Healy

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 17, 2025 (and under F.R.A.P. 25 and 8th Cir. R. 25A(d)), at the time Appellant is filing this Brief with this Court, Appellant is also serving this Brief on Appellees by email, and, after the

40

review process described in 8th Cir. R. 28A(a), undersigned will timely deliver to opposing counsel named below (a) a revised brief (if required), (b) a paper copy of the final version of the brief, and (c) an e-mail version in Microsoft Word. Opposing counsel is:

Robert B. Anderson
May, Adam, Gerdes & Thompson LLP
P.O. Box 160
503 South Pierre Street
Pierre, SD 57501
(605) 224-8803
(605) 224-6289 (fax)
rba@mayadam.net

James Ellis Moore
Woods, Fuller, Shultz & Smith, PC
PO Box 5027
Sioux Falls, SD 57117-5027
336-3890
339-3357 (fax)
James.Moore@woodsfuller.com

Justin Allen Bergeson
Woods, Fuller, Shultz & Smith PC
300 South Phillips Avenue, Suite 300
Sioux Falls, SD 57104
605-336-3890
justin.bergeson@woodsfuller.com

Dated this 17th day of January, 2025.

_Bret Healy_
Bret Healy

41

# STANDARD TRUCKLOAD BILL OF LADING

| SHIP FROM | | Bill of Lading Number: |
|---|---|---|

**Name:** The Ink Spot
**Address:** 3433 Hampton Ave
**City/State/Zip:** Saint Louis, MO 63139-1940
**Pickup Date:** 01/21/2025      FOB:

OrderTrackingID: 463.012125

24 Express Logistics Inc.

| SHIP TO | | |
|---|---|---|

**Name:** Thomas F. Eagleton Courthouse        **Location#:**
**Address:** 111 S 10th St Room 24.329
**City/State/Zip:** Saint Louis, MO 63102-1125
**Delivery Date:** 01/21/2025      FOB:

**CARRIER NAME:**
Trailer number:
Seal number(s):
**SCAC:**
**Pro number:** 463.012125
**Freight Charge Terms:** (Freight charges are prepaid unless marked otherwise)
Prepaid____        Collect____        3rd Party____
(check)      Master Bill of Lading with attached underlying Bill of Lading

| THIRD PARTY FREIGHT CHARGES BILL TO | | |
|---|---|---|

**Name:**
**Address:**
**City/State/Zip:**
**Customer Ref/PO#:** QP45684
**Customer Ref/PO#:**
**Customer Ref/PO#:**

**Shipper ID#:** 05349-1 STL
**Consignee ID#:**

**Pickup Instructions:** Please pick up from rear of building in back parking lot

**Delivery Instructions:** Deliver to room 24.329 at the courthouse

## CUSTOMER ORDER INFORMATION

| CUSTOMER ORDER NUMBER | #PKGS | WEIGHT | PALLET/SLIP | | ADDITIONAL SHIPPER INFO |
|---|---|---|---|---|---|
| | Pieces[1] | 1.00 | Y | N | |
| | | | Y | N | |
| | | | Y | N | |
| | | | Y | N | |
| | | | Y | N | |
| **GRAND TOTAL** | 1 | | | | |

## CARRIER ORDER INFORMATION

| HANDLING UNIT | | PACKAGE | | WEIGHT | H.M. (X) | COMMODITY DESCRIPTION |
|---|---|---|---|---|---|---|
| QTY | TYPE | QTY | TYPE | | | Commodities requiring special or additional care or attention in handling or stowing must be so marked and packaged as to ensure safe transportation with ordinary care. |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | **TOTAL** | |

Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property as follows:

The agreed or declared value of the property is specifically stated by the shipper to be not exceeding_____ per_____.

RECEIVED, subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to the rates, classifications and rules that have been established by the carrier and are available to the shipper, on request, and to the terms and conditions set forth on our website at www.247expresslogistics.com as well as to all applicable state and federal regulations.

### DELIVERY INFORMATION
Consignee Name:
Consignee Signature/Date:
Notes:

NOTE Liability Limitation for loss or damage in this shipment may be applicable. See 49 U.S.C. 14706(c)(1)(A) and (B).

| **Trailer Loaded:** | **Freight Counted:** |
|---|---|
| By Shipper | By Shipper |
| By Driver | By Driver/pallets said to contain |
| | By Driver/Pieces |

The carrier shall not make delivery of this shipment without payment of feight and all other lawful charges.

**Shipper Signature**

| SHIPPER SIGNATURE/DATE | CARRIER SIGNATURE/PICKUP DATE |
|---|---|
| This is to certify that the above named materials are properly classified, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the DOT. | Carrier acknowledges receipt of packages and required placards. Carrier certifies emergency response information was made available and/or carrier has the DOT emergency response guidebook or equivalent documentation in the vehicle. Property described above is received in apparent good order, except as noted. |
| **PRINT NAME:** | **PRINT NAME:** |
| **SIGN:** | **SIGN:** |
| **DATE:** | **DATE:** |